IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHINDA NOMESIRI,<br><br>                Petitioner,<br><br>    vs.<br><br>KIMBERLY A. SEIBEL, Warden, Deuel Vocational Institution,[1]<br><br>                Respondent. | No. 2:15-cv-01686-JKS<br><br>MEMORANDUM DECISION |

Chinda Nomesiri, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Nomesiri is in the custody of the California Department of Corrections and Rehabilitation and incarcerated at Deuel Vocational Institution. Respondent has answered, and Nomesiri has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On August 26, 2013, Nomesiri was charged with discharge of a firearm in a grossly negligent manner (Count 1); felon in possession of a firearm (Count 2); and assault with a deadly weapon (Count 3). As to Count 3, the information alleged that Nomesiri personally inflicted great bodily injury and had suffered a prior serious felony conviction. On direct appeal of his conviction, the California Court of Appeal laid out the following facts underlying this case and the evidence presented at trial:

> [Nomesiri's] family grew marijuana in their backyard, and there were alarms in place to alert the family of attempted raids. On September 18 or 19, 2011, [Nomesiri], a convicted felon, fired a .22–caliber Iver Johnson carbine rifle into the air to scare off

---

[1]     Kimberly A. Seibel is substituted for J. Price as Warden, Deuel Vocational Institution. FED. R. CIV. P. 25(d).

potential raiders (counts one and two, grossly negligent discharge and firearm possession by a convicted felon).

On the night of September 22, 2011, victim Cheng was among those attempting another raid, and [Nomesiri's] mother shot Cheng in the neck.[FN1] [Nomesiri] then bashed Cheng repeatedly in the head with a shovel as he lay on the ground (count three, assault with a deadly weapon with personal infliction of great bodily injury).

> FN1.  [Nomesiri's] mother, originally a codefendant charged with involuntary manslaughter (Pen. Code, § 192, subd. (b)), died before trial, on November 24, 2012.

When two officers arrived and examined Cheng, they each detected a pulse, and one heard Cheng gasping for breath. Cheng was dead when a paramedic arrived and examined him minutes later.

The People's witness, pathologist Dr. Stephany Fiore, testified the bullet wound to the neck was fatal. Death was caused by the bullet wound, not by the blows from the shovel, which caused a skull fracture, lacerations, and facial bruising that indicated Cheng was still alive when struck by the shovel. Cheng could have spoken after the gunshot, and could have lived for several minutes; a pulse detected by first responders would signal he was still alive.

Pathologist Dr. Judy Melinek, called to testify by the defense, agreed the gunshot wound to the neck caused death, but opined the resulting loss of blood to the brain would cause death within seconds. She thought "it would be unlikely to damn near impossible" for Cheng to have made noises or talked after he was shot. On cross-examination, she conceded it was possible that his heart may have continued to beat for several minutes, but believed he was dead when first struck by the shovel. In her view, under California law, the heart can still be beating, but a person can be brain dead. The bleeding did not indicate that Cheng was alive after he was shot. She conceded "brain death" was a term used in a hospital setting, not in the field.

In a pretrial interrogation, partly admitted into evidence (see Part II of the Discussion, post) [Nomesiri] stated an alarm sounded just after 2 a.m., but he did not see anybody in the yard and went back to bed.[FN2] About an hour or so later, he heard something and then saw two men in the yard, one cutting at a plant with a machete or large knife, and another trying to jump the fence. [Nomesiri] screamed or yelled, and his mother fired the gun. [Nomesiri] heard one man (Cheng) on the ground speaking Hmong, telling his companion that he had been shot, and [Nomesiri] then struck the man on the ground repeatedly with a shovel. He hit Cheng around 10 to 20 times on his head, body, back, and legs.

> FN2.  The parties on appeal cite to the transcript used as an aid by the jury. We do the same.

*People v. Nomesiri*, No. C075767, 2015 WL 1577431, at *1-2 (Cal. Ct. App. Apr. 9, 2015).

2

Prior to trial, the court granted the prosecutor's motion to strike the prior serious felony conviction allegation. On December 5, 2013, the jury found Nomesiri guilty as charged. The trial court subsequently denied probation and sentenced Nomesiri to an imprisonment term of 6 years and 9 months, calculated as follows: 3 years on Count 3 plus 3 years for the great bodily injury enhancement, plus 8 months on Count 2. The court stayed the term on Count 1.

Through counsel, Nomesiri appealed his conviction, arguing that: 1) insufficient evidence was presented to sustain his assault with a deadly weapon conviction; 2) the trial court erred by failing to *sua sponte* instruct the jury on the legal definition of life; 3) trial counsel was ineffective for failing to request a pinpoint instruction giving the legal definition of life; 4) the prosecutor committed misconduct by misstating the law and misleading the jury as to the legal definition of life, and trial counsel was ineffective for failing to object; 5) the trial court's admission of his pre-trial statements to law enforcement violated his *Miranda*[2] rights, and trial counsel was ineffective for failing to move to suppress the statements; and 6) the trial court abused its discretion by ordering Nomesiri to pay victim restitution in the amount of $40,000. On April 9, 2015, the California Court of Appeal issued a reasoned, unpublished opinion vacating the restitution order but otherwise unanimously affirming the judgment against Nomesiri. *Nomesiri*, 2015 WL 1577431, at *11. Nomesiri petitioned in the California Supreme Court for review of his unsuccessful claims, which was denied without comment on June 17, 2015.

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Nomesiri then timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on August 4, 2015. *See* 28 U.S.C. § 2244(d)(1)(A). Briefing is now complete, and the case has been reassigned to the undersigned judge for adjudication.

## II. GROUNDS/CLAIMS

In his *pro se* Petition before this Court, Nomesiri argues that: 1) there was insufficient evidence to support his assault with a deadly weapon conviction; 2) the trial court erred in failing to *sua sponte* instruct the jury on the legal definition of life; 3) the prosecutor committed misconduct when she misstated the law and misled the jury as to the legal definition of life; 4) the admission of his pre-trial statements to law enforcement violated *Miranda*; and 5) trial counsel was ineffective for failing to request a pinpoint instruction on the legal definition of life.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the

relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

A.    <u>Insufficiency of the Evidence (Ground 1)</u>

Nomesiri first argues that there was insufficient evidence that the victim was alive when he assaulted him to support a conviction for assault with a deadly weapon. As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see also McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard). This Court must therefore determine whether the California court unreasonably applied *Jackson*. In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial. *Jackson*, 443 U.S. at 318-19. Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution." *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set forth in state law. *Jackson*, 443 U.S. at 324 n.16. This Court must also be ever mindful of the deference owed to the trier of fact and the sharply limited nature of constitutional sufficiency

review. *Juan H. v. Allen*, 408 F.3d 1262, 1275 (9th Cir. 2005). A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam); *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

In considering this claim on direct appeal, the Court of Appeal laid out the following facts underlying this claim:

> The defense theory, beginning with opening statements to the jury, was that Cheng was dead before he hit the ground, and therefore the charged assault was actually on a "dead victim." As summarized *ante*, the evidence conflicted on this point.
> The prosecutor argued hitting Cheng with the shovel constituted assault with a deadly weapon, and the ensuing skull fracture constituted great bodily injury. Referencing the "battle of the experts" in the case, the prosecutor argued Cheng was still alive when [Nomesiri] struck him with the shovel, as shown by [Nomesiri's] statements, the testimony of the two officers, and Dr. Fiore's testimony. The prosecutor argued that Dr. Melinek's testimony about brain death had no application to the facts shown by the evidence in this particular case. The prosecutor conceded in argument to the jury that "if [Cheng] was dead when the blows were inflicted, there is no crime . . . . This is only a crime if [Cheng] was still alive."
> The defense, in reply, emphasized Dr. Melinek's testimony. Defense counsel argued that if Cheng died "as a result of the gunshot wound to the neck, there is no crime committed." He told the jury that if it concluded Cheng "was dead seconds after he was shot, there is no crime." In response, the prosecutor argued that "just because [Cheng] died of the gunshot wound . . . does not mean that he was dead when [hit by the shovel]."

*Nomesiri*, 2015 WL 1577431, at *2.

Nomesiri argues, as he did on direct appeal, that the evidence was insufficient to prove that Cheng was alive at the time Nomesiri hit him with the shovel primarily by pointing to inconsistencies in the prosecution's evidence as well as to contrary evidence. But like the Court of Appeal, this Court is precluded from either re-weighing the evidence or assessing the

7

credibility of witnesses. *Schlup v. Delo*, 513 U.S 298, 330 (1995); *Bruce v. Terhune*, 376 F.3d 950, 957-58 (9th Cir. 2004). Under *Jackson*, the role of this Court is to simply determine whether there is any evidence, if accepted as credible by the jury, sufficient to sustain conviction. *See Schlup v. Delo*, 513 U.S. 298, 330 (1995). In this case, viewing the evidence in the light most favorable to the verdict, there was certainly enough evidence from which a reasonable factfinder could conclude that Cheng was still alive at the time of the assault. As the Court of Appeal reasonably explained:

> During pretrial proceedings in this case, the trial court observed that "in watching the videotape [of Nomesiri's interrogation], it appeared relatively clear that [Nomesiri] was aware that the individual who had been shot was dying, but was far from dead at the time the shovel was being leveled on him." The trial court denied a defense motion for an acquittal based in part on the same reasoning, as well as the testimony of the two officers who detected Cheng's pulse when they arrived. The jury was presented with this evidence, plus conflicting expert opinions, one of which opined [Cheng's] wounds from the shovel had been inflicted before his death based on the pattern of bruising and the degree of bleeding beneath the scalp.
> [Nomesiri's] argument on appeal in effect disregards the substantial evidence rule, which requires us to view the evidence in the light most favorable to the verdict, to determine if credible, solid, evidence supports the conviction. [Nomesiri's] own statements that he heard Cheng speak before he hit him ("I grabbed the shovel and then I go over to hit that guy cause he was like . . . . he was telling his friend he was like I'm shot or something like that . . . . And I just went in, I went in and hit him") belie his contention on appeal. The jury could have accepted that admission, which by itself shows Cheng was alive (by any definition) when the assault began. Further, the People's expert testified the injuries were inflicted before death, and the defense expert's disagreement does not render the People's evidence insufficient. Even assuming for the sake of argument that the presence of a pulse is insufficient in and of itself to show life for purposes of criminal law, the testimony of two officers that they felt a pulse corroborated [Nomesiri's] own inculpatory admissions that Cheng was alive and speaking immediately before the assault.

*Nomesiri*, 2015 WL 1577431, at *4 (citations omitted).

Although it might have been possible to draw a different inference from other evidence, this Court is required to resolve that conflict in favor of the prosecution. *See Jackson*, 443 U.S.

8

at 326. Nomesiri bears the burden of establishing by clear and convincing evidence that these factual findings were erroneous. 28 U.S.C. § 2254(e)(1). He has failed to carry such burden. For the reasons persuasively stated by the Court of Appeal, the record does not compel the conclusion that no rational trier of fact could have found that Cheng was alive when Nomesiri hit him with the shovel, especially considering the double deference owed under *Jackson* and AEDPA. Nomesiri is therefore not entitled to relief on his legal insufficiency claim.

B.        Instructional Error/Ineffective Assistance of Counsel (Grounds 2, 5)

Nomesiri next argues in Ground 2 that the trial court erred in failing to *sua sponte* instruct the jury that the law required that Cheng's heart be pumping and his brain be functioning at the time he was hit by the shovel in order to convict Nomesiri of assault. He relatedly argues in Ground 3 that his trial counsel was ineffective for failing to request such instruction.

Because jury instructions in state trial are typically matters of state law, federal courts are bound by a state appellate court's determination that a jury instruction was not warranted under state law. *See Bradshaw*, 546 U.S. at 76 (2005) (noting that the Supreme Court has repeatedly held that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *see also Williams v. Calderon*, 52 F.3d 1465, 1480-81 (9th Cir. 1995). An instructional error, therefore, "does not alone raise a ground cognizable in a federal habeas proceeding." *Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1986) (citation omitted).

A challenged instruction violates the federal constitution if there is a "reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." *Boyde v. California*, 494 U.S. 370, 380

9

(1990). The question is whether the instruction, when read in the context of the jury charges as a whole, is sufficiently erroneous to violate the Fourteenth Amendment. *Francis v. Franklin*, 471 U.S. 307, 309 (1985). This Court must also assume in the absence of evidence to the contrary that the jury followed those instructions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the law that jurors follow their instructions"); *see Francis*, 471 U.S. at 323-24 & n.9 (discussing the subject in depth).

It is well-established that not only must the challenged instruction be erroneous but it must violate some constitutional right, and it may not be judged in artificial isolation but must be considered in the context of the instructions as a whole and the trial record. *Estelle*, 502 U.S. at 72. This Court must also bear in mind that the Supreme Court has admonished that the inquiry is whether there is a reasonable likelihood that the jury applied the challenged instruction in a way that violates the constitution and that the category of infractions that violate "fundamental fairness" is very narrowly drawn. *Id.* at 72-73. "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process clause has limited operation." *Id*. Where the defect is the failure to give an instruction, the burden is even heavier because an omitted or incomplete instruction is less likely to be prejudicial than an instruction that misstates the law. *See Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). In those cases, the inquiry is whether the trial court's refusal to give the requested instruction "so infected the entire trial that the resulting conviction violates due process." *See id.* at 156-57; *Estelle*, 502 U.S. at 72. Moreover, even if the trial court's failure to give the instruction violated due process, habeas relief would still not be available unless the error had a "substantial and injurious effect or influence in determining

the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *California v. Roy*, 519 U.S. 2, 5 (1996).

On direct appeal, the Court of Appeal agreed with Nomesiri that the jury should have been instructed that if Cheng were already dead from the gunshot wound at the time Nomesiri hit him, no assault by Nomesiri occurred, and "assume[d] the trial court erred by giving incomplete instructions on assault with a deadly weapon, by failing to include as an element that the People had the duty to prove Cheng was alive when struck by the shovel." *Nomesiri*, 2015 WL 1577431, at *3.[3] It nonetheless concluded that the error was harmless because "both the prosecutor's and defense counsel's arguments 'foreclosed any realistic possibility of the jury not believing they had to find that Cheng was alive when struck by the shovel." *Id.* at *4 (citation omitted).

As previously mentioned, a claim of jury instruction error is likewise reviewed under a harmless error standard on federal habeas review. *Evanchyk v. Stewart*, 340 F.3d 933, 940-41 (9th Cir. 2003). Habeas relief is only available where the error had a "substantial and injurious effect or influence in determining the jury's verdict" and resulted in "actual prejudice." *Brecht*, 507 U.S. at 637; *Hedgpeth v. Pulido*, 555 U.S. 57, 61-62 (2008). The relevant question is "whether the instructions as a whole are misleading or inadequate to guide the jury's deliberation." *United States v. Elofus*, 598 F.3d 1171, 1174 (9th Cir. 2010).

On independent review, this Court likewises conclude that any instructional error was harmless in light of the arguments by the prosecutor and defense counsel on that point. The

---

[3] The appellate court stated, however, that it "d[id] not agree with the content and form of [Nomesiri's] proposed instructions." *Nomesiri*, 2015 WL 1577431, at *3.

Court of Appeal's harmlessness determination is both reasonable and fully supported by the record. Nomesiri has not established any likelihood that he was prejudiced by the given instructions or that the jury would have reached a different verdict had it received a specific charge that the People had to prove Cheng was alive at the time of the assault. *Brecht*, 507 U.S. at 637. The Court thus finds no basis to believe that Nomesiri's conviction was the result of an "extreme malfunction" of the state criminal justice system." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Nomesiri is not entitled to relief on his instructional error claim. And for the same reasons, he fails to show that he was prejudiced by counsel's failure to request such instruction.[4] *See Strickland v. Washington*, 466 U.S. 668, 687, 697 (1984) (to demonstrate ineffective assistance of counsel, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense; courts may consider either prong of the test first and need not address both prongs if the defendant fails on one). Nomesiri's ineffective assistance claim also fails.

C.  Prosecutorial Misconduct (Ground 3)

In another related claim, Nomesiri alleges that the "[p]rosecutor committed misconduct by misstating the law and misleading the jury as to the legal definition of life." As an initial matter, because the state appellate court found Nomesiri's prosecutorial misconduct claim forfeited under California's contemporaneous objection rule, *Nomesiri*, 2015 WL 1577431, at *3 n.3, the claim is procedurally defaulted from federal habeas review, *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (a federal court will not review a claim if the state court's rejection of

---

[4] Because the Court of Appeal concluded that Nomesiri's proposed instruction was not warranted, the Court does not consider whether counsel was ineffective for failing to request it.

the claim rests on a state law ground that is independent of the federal question and adequate to support the judgment).  The Ninth Circuit has repeatedly recognized and applied the California contemporaneous objection rule in affirming denial of a federal habeas petition on grounds of procedural default where there was a complete failure to object at trial.  *See, e.g.*, *Inthavong v. Lamarque*, 420 F.3d 1055, 1058 (9th Cir. 2005); *Paulino v. Castro*, 371 F.3d 1083, 1092-93 (9th Cir. 2004).  Because the state appellate court held that the claim was thereby forfeited under California's contemporaneous objection rule, the claim may be deemed procedurally defaulted on federal habeas review.

Moreover, this prosecutorial misconduct claim fails on the merits.  To successfully raise a claim cognizable on habeas review based on a prosecutor's comments at trial, a petitioner must demonstrate that the prosecutor's comments "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  Under this standard, only egregious prosecutorial misconduct can give rise to a constitutional claim.  *See Duckett v. Godinez*, 67 F.3d 734, 743 (9th Cir. 1995).  Nomesiri fails to satisfy these standards here.  At trial, Nomesiri argued that death occurred when the victim's brain function stopped.  The prosecutor argued that the "brain death" rules did not apply outside of the hospital context and thus death occurred when the victim's "vital signs" could no longer be detected.  But as the Court of Appeal reasonably concluded, Nomesiri cannot show that the prosecutor's argument infected his trial with unfairness because "the evidence supported the jury's implicit finding that Cheng was alive—even applying [Nomesiri's] definitions of life and death—at the time he was

assaulted by [Nomesiri]." *Nomesiri*, 2015 WL 1577431, at *3 n.3. Nomesiri's prosecutorial misconduct claim thus fails.

D.    *Miranda* Violation (Ground 4)

Finally, Nomesiri claims that the trial court's admission of his pretrial statement to law enforcement violated his *Miranda* rights. Like his prosecutorial misconduct claim, the Court of Appeal found the claim forfeited because "[Nomesiri] did not move to suppress his statements on [involuntariness or *Miranda*] grounds, nor interpose *Miranda* or involuntariness objections when they were introduced into evidence." *Id.* at *5. Consequently, this claim is also procedurally defaulted from federal habeas review. *Coleman*, 501 U.S. at 729-30.

Nor is Nomesiri entitled to relief on the merits of his claim. In *Miranda*, the United States Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. at 444. Under this rubric, an interrogating officer must first advise the potential defendant that he or she has the right to consult with a lawyer, the right to remain silent and that anything stated can be used in evidence against him or her prior to engaging in a custodial interrogation. *Id.* at 473-74. Once *Miranda* warnings have been given, if a suspect makes a clear and unambiguous statement invoking his constitutional rights, "all questioning must cease." *Smith v. Illinois*, 469 U.S. 91, 98 (1984).

A defendant may waive his *Miranda* rights so long as the waiver is "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception," and "made with a full awareness of both the nature of the right being abandoned and

14

the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

A valid waiver of *Miranda* rights depends upon the totality of the circumstances. "The waiver inquiry 'has two distinct dimensions': waiver must be 'voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception,' and 'made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *Berghuis v. Thompkins*, 560 U.S. 370, 382-83 (2010) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). Although some earlier Supreme Court cases had indicated the government had a "heavy burden" to show waiver, *Berghuis* explained that the burden is not too onerous. *Berghuis*, 560 U.S. at 384. Indeed, the waiver may be implied by conduct, and need not be explicit or written. *Id.* at 383.

In rejecting Nomesiri's *Miranda* claim on direct appeal, the Court of Appeal explained:

> The transcript shows [Nomesiri] told Detective Heinlein that he was "exhausted," but he then answered questions for a long time, with no evident hesitation. He was advised of his *Miranda* rights, described by Detective Heinlein as "a protocol that we have to go by" but, contrary to [Nomesiri's] view, this use of the term "protocol" did not minimize or obscure those rights. Detective Heinlein explained the right to remain silent, the fact anything [Nomesiri] said may be used against him, he had the right to an attorney before questioning, and he had the right to appointment of an attorney free of charge before any questioning if [Nomesiri] could not afford to pay an attorney. Then [Nomesiri] freely and openly answered Detective Heinlein's questions. Nothing suggests any overbearing conduct leading to an involuntary admission, or violation of the dictates of *Miranda*.

*Nomesiri*, 2015 WL 1577431, at * 5.

This analysis is both reasonable and fully supported by the record. Nomesiri did not assert his *Miranda* rights at any time during the interview, and there is nothing in the record to

15

support Nomesiri's bare contention that the statements were involuntarily obtained. Nomesiri is therefore not entitled to relief on this ground.[5]

V. CONCLUSION AND ORDER

Nomesiri is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: June 6, 2017.

                /s/James K. Singleton, Jr.
                JAMES K. SINGLETON, JR.
                Senior United States District Judge

---

[5] To the extent Nomesiri re-asserts his direct appeal claim that counsel was ineffective for failing to move to exclude the statements on *Miranda* grounds, because the statements were not obtained in violation of *Miranda*, counsel cannot be faulted for not moving to exclude them on those grounds. *See Lockhart v. Fretwell*, 506 U.S. 364, 374 (1993) (O'Connor, J., concurring) (failing to raise a meritless objection cannot constitute prejudice under a *Strickland* ineffective assistance of counsel claim).